DANIEL FORREST v. JOHN O'DONNELL.

*Attachment—Right to sue on bond.*

An assignment of a judgment in attachment does not carry the legal title to the bond, if it does not expressly purport to do so.

An action at law must generally be brought in the name of the party who holds the legal interest as distinguished from the equitable right, even though the latter embraces the exclusive interest in the benefit to be derived from the property.

The trustee and not the beneficiary has the right of action at law.

A bond in attachment must run to the sheriff who holds it in trust, and the plaintiff in attachment has no right to sue on it or transfer it until failure of execution, and then only in the sheriff's name, unless the latter has assigned the bond to him.

Act 75 of 1863 merely amended Comp. L. (1857) § 4159, permitting the assignee of a bond, note or other chose in action to sue in his own name, and was not meant to affect the special provisions on bonds for the release of property under attachment.

Error to Saginaw. Submitted Jan. 15. Decided Jan. 23.

ACTION ON BOND. Plaintiff brings error.

*Michael Brennan* for plaintiff in error. A bond in attachment ought to be liberally construed for the benefit of the beneficiary, *Claytor v. Anthony*, 15 Gratt., 518; assignment of a judgment in attachment carries the bond as an incidental security, *Conyngham v. Smith*, 16 Ia., 471; *Pattison v. Hull*, 9 Cow., 747; *Thomas v. Hubbell*, 35 N. Y., 122; *Bowdoin v. Colman*, 6 Duer, 182; *Irish v. Sharp*, 89 Ill., 261; the bond belongs to the beneficiary, and under an early statute he might sue on it in the sheriff's name, *Dorr v. Clark*, 7 Mich., 310; under Comp. L., § 5775, the beneficiary or purchasers of his rights can sue on it without using the sheriff's name and without a written assignment, *Draper v. Fletcher*, 26 Mich., 154.

*J. H. McDonald* and *B. M. Thompson* for defendant in error.

GRAVES, J. February 6, 1871, Hector A. Beaton sued out an attachment from the circuit court against Mc-Mullen and Porterfield, and delivered it to the sheriff, Alfred Avery, for service, and on the next day the officer seized a quantity of personal property found in the possession of the firm of Stephen Cromwell & Sons, and on the 10th of the same month they delivered to him a bond under Comp. Laws, § 6409, to prevent dispossession. The bond purported to be executed to him by the firm as principals and O'Donnell as surety, and was conditioned for the production of the property attached to satisfy any execution that might be issued on any judgment that should be recovered by Beaton in the attachment suit.

April 24, 1872, Beaton, the attachment plaintiff, recovered judgment for $189.82, besides costs, and on the first of May thereafter sued out execution returnable on the 2d of July, and the sheriff, Avery, returned it *nulla bona* on the 12th of that month.

While the execution was out, and on the 9th of May, 1872, the plaintiff Beaton assigned the judgment to the plaintiff in this suit. The assignment was drawn with great particularity, but it did not refer at all to the bond. I pass by the error about the date of the judgment and the slight inaccuracy in the amount.

July 8, 1872, being two months later, the sheriff assigned the bond to Beaton. Subsequently Forrest, the assignee of the judgment, brought this suit upon the bond against O'Donnell, the surety, and the circuit judge on motion at the trial, excluded the bond, and the plaintiff was thereby defeated. He now asks a revision of the ruling.

The declaration averred an assignment of the bond by the sheriff Avery to Beaton on the 8th of July, 1872, and an assignment of the judgment and bond also from Beaton to the plaintiff on the 9th of May preceding.

Now as no other assignment was made to Forrest except that of the 9th of May, which did not allude to the bond, it is first of all material to ascertain whether the instrument passed by that assignment; because, if it did not, the ruling objected to cannot be disturbed, and the points agitated relative to the execution of the obligation become unimportant.

It is a general rule of the common law that the action must be brought in the name of the party in whom the legal interest is vested, and that the courts will not in general take notice of mere equitable titles and rights of action, as contradistinguished from the strict legal title and interest, so as to invest the equitable or merely beneficial claimant with the ability to adopt legal proceedings in his own name, although the equitable right embrace the most extensive or even the exclusive interest in the benefit to be derived from the contract. The ground of distinction between legal and equitable remedies requires this principle to be observed. If the beneficiary were permitted to sue at law in his own name, the protection and advantage intended to be secured by the intervention of a trustee clothed with the legal title, might be lost, and the salutary benefits arising from giving courts of equity control over matters of trust would be defeated. Besides it would be impracticable without departing from the common principles of jurisprudence, to exclude the power of the trustee to sue in respect of his legal right; and it would be highly mischievous and unjust to permit the defendant to be harassed by two actions on the same contract. The right of action at law has therefore been vested solely in the party having the strict legal title and interest, in exclusion of the mere equitable claim. If a bond be given to A conditioned for the payment of money to him for the use or benefit of B, or conditioned to pay the money to B, the action must be brought in the name of A, and B cannot sue for or release the demand. In such case A is evidently a trustee, and the obligatory part of the instru-

ment and the acknowledgment of legal responsibility are to him. Such is the doctrine as laid down by Chitty, and the authorities support him. 1 Chitty Pl., 2, 3, and notes (16th Am. ed.).

Admitting the law to be as stated, the next considera tion is whether the strict legal title and interest in the bond was transferred by Beaton to Forrest by the assignment of the judgment.

Does the law contemplate the instrument as belonging to the judgment? It is not between the parties to the suit. It must run to the sheriff, and some at least of the obligors are expected to be strangers to the action. The judgment is made up without reference to it and is in no way dependent on it. The suit is not to be "in any way affected" by it. Comp. L., § 6411. The sheriff holds it in trust. It rests in his hands for the time being as a passive obligation, and it confers no title to sue until failure occurs to produce the property in answer to an execution. When that happens the plaintiff in attachment may sue upon it, but only in the name of the officer or his successor, unless the legal title and interest are transferred to him by the officer. The pro- vision is particular in requiring the suit to be in the name of the officer and not in that of the party equita- bly entitled, unless a regular assignment is made. If the legal title is conveyed to the plaintiff he may sue in his own name. But the statute looks upon the instru- ment as non-actionable in the plaintiff's name without such assignment. All the provisions tend to show that the instrument is a mere collateral incident.

It must be admitted, I think, that the judgment is a distinct matter, and that the assignment of it did not convey the legal title and interest in the bond. But it may be said that the assignment, in consequence of the broad language used in it, may be construed as intended to embrace the bond, and that an equitable title at least, which ought to be deemed sufficient under our statute for the assignment of rights of action, was actually trans-

ferred.    The case can derive no aid from the general statute for the assignment of rights of action.    The act of 1863 was a mere amendment of Comp. L. 1857, § 4159 (Laws 1863, p. 102) and was not intended to affect the special provisions concerning proceedings on bonds for the release of property in attachment.    This is manifest from the title of the act and the general principles of construction. But if the view suggested could be supposed to merit acceptance under any circumstances, it appears to me that the facts in the record sufficiently repel it.    If Beaton had possessed any title to the bond when he assigned the judgment, it might perhaps be made a question whether he did not mean to transfer it.    But he had no title at that time and he knew it, and his assignment, although carefully and elaborately drawn, did not refer to it or import any undertaking to procure its transfer to Forrest.    For nearly two months it remained in the sheriff's hands unassigned and out of Beaton's power to convey, and he could do nothing more than to agree that it should be conveyed, and there is no evidence of his having done that, even.

Moreover, there is no evidence that at the date of the assignment of the judgment on the part of Beaton there had accrued any right to an assignment from the sheriff.    The statute does not contemplate the existence of any right of the plaintiff in attachment to the bond until there is default, and there is no evidence that any had occurred on the 9th of May when the judgment was assigned.

Upon the whole I am forced to conclude that the assignment of the judgment conveyed no right to Forrest to sue as plaintiff on the bond, and that the ruling of the circuit judge must therefore stand.

Judgment affirmed with costs.

The other Justices concurred.